IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BLUE CROSS BLUE SHIELD ASSOCIATION,** *et al.*, <br><br>                         **Plaintiffs,** <br> vs. <br><br> **GLAXOSMITHKLINE LLC,** <br><br>                         **Defendant.** | Civil Action No. 2:13-cv-4663-JS |

**PLAINTIFFS' BRIEF REGARDING THE MARCH 12, 2019
HEARING ON GSK'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs submit this brief to answer two key questions raised by the Court and to correct certain statements made by counsel during the March 12, 2019 hearing on GSK's motion for summary judgment.

**1.**      *Kwikset*

The Court began the March 12 hearing by asking a question about *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011), and its connection with *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018). In *Johnson & Johnson*, the Third Circuit noted that its holding in that case "does not conflict" with *Kwikset*. *Id*. at 290 n.14. This Court asked how *Kwikset* applies to the present case.

Plaintiffs submit that *Kwikset* fully supports Plaintiffs' position with regard to both causation and injury. In *Kwikset*, the California Supreme Court held that the plaintiffs adequately alleged causation and injury because, had they known that the defendant misrepresented its locksets as "Made in U.S.A.," the plaintiffs "would not have

purchased" the locksets. 51 Cal. 4th at 319. In particular, the *Kwikset* court held that an allegation that a plaintiff "would not have bought the product but for the misrepresentation . . . is sufficient to allege causation. It is also sufficient to allege economic injury." *Id*. at 330.

In the present case, Plaintiffs' claims are directly analogous to the claims upheld in *Kwikset*. Indeed, this Court began the March 12 hearing by pointing out that the injury alleged here and the injury alleged in *Kwikset* are "similar." (Tr. p. 5, line 21.)

During his rebuttal argument, however, GSK's counsel mis-described *Kwikset* as applying only to "overcharge" claims -- i.e., claims that "you would have purchased the drug, but you paid more than you would have been willing [to] pay." (Tr. p. 68, lines 8-11.) As demonstrated by the language from *Kwikset* quoted above, the *Kwikset* plaintiffs claimed that, had they known the truth, they would have been unwilling to purchase the product at all, at any price. 51 Cal. 4th at 319, 330. The *Kwikset* plaintiffs did ***not*** claim that they would have been willing to purchase the product at some lower price and therefore were suing to recover only the supposed overcharge.

Likewise, Plaintiffs here allege that, had they known the truth, they would have been unwilling to pay for GSK's drugs at all, at any price. At the March 12 hearing, GSK's counsel improperly described such claims as non-actionable "buyer's remorse." (Tr. p. 68, lines 2-4.) On the contrary, courts routinely uphold claims that, but for a defendant's misrepresentations, a plaintiff would have refused to enter into the transaction, on any terms. *Kwikset* squarely illustrates that point.

GSK's counsel compounded his erroneous characterization of *Kwikset* by arguing that the same "overcharge" limitation applies to *In re Avandia Mktg., Sales Practices &*

*Product Liab. Litig.*, 804 F.3d 633 (3d Cir. 2015).  (Tr. p. 68, lines 5-11.)  *Avandia* contains no such limitation.  To begin with, *Avandia* did not purport to define all possible categories of injury that may result from fraudulent misrepresentations or concealments.  Furthermore, *Avandia* addressed two particular theories -- an "excess price" theory and a "quantity effect" theory -- and, as this Court recognized in denying GSK's Rule 12(b)(6) motion, Plaintiffs' allegations here incorporate "elements of both theories."  (Dkt. No. 105, at 12.)  This Court went on to hold that Plaintiffs adequately alleged that GSK's drugs were economically "*worthless*" and, had Plaintiffs known the truth, they "would not have placed the drugs on their formularies" -- in other words, Plaintiffs would not have paid for the drugs at all.  (*Id.*, emphasis added by the Court.)

      Similarly, the issue before the Third Circuit in *Johnson & Johnson* was not whether the plaintiff, Ms. Estrada, was seeking to recover all of her purchase price or only some of it (an "overcharge").  Again, that is a false dichotomy applied by GSK's counsel during the March 12 hearing.  (Tr. p. 68, line 5.)  The issue was whether Ms. Estrada would have acted any differently knowing what she knows now -- either by paying less, or by refusing to pay at all.  According to her own allegations, she would not have acted differently in any respect.  She received all of the product's benefits, and she failed to allege that the product was worth even "one penny less than what she paid."  903 F.3d at 288.  Thus, Ms. Estrada was unable to identify anything she wanted and expected at the time of purchase that she did not actually receive.  Unlike *Kwikset* and the present case, Ms. Estrada's claims were indeed an instance of "buyer's remorse."

      Plaintiffs' claims here are patently distinguishable from Ms. Estrada's.  Plaintiffs allege, and the record demonstrates, that they **would** have acted differently had they

3

known what they know now -- and can prove now -- namely, that GSK's drugs were egregiously non-compliant with cGMPs and were fraudulently sold by GSK. Ms. Estrada's allegations failed to present anything comparable.

At the March 12 hearing, GSK's counsel also erroneously invoked *Johnson & Johnson* by making the naked assertion that Plaintiffs "got the benefit of their bargain." (Tr. p. 69, lines 22-23.) To this day, GSK has failed to cite any facts to support that assertion. GSK's opening brief declared that Plaintiffs got what they paid for because patients "took the drugs and benefitted," and therefore the drugs had "demonstrable value." (See GSK's initial summary judgment brief at 34, 35.) Plaintiffs' brief challenged those assertions as factually unfounded. (See Plaintiffs' opposition brief at 26-27.) GSK's reply brief offered nothing in response. Yet at the March 12 hearing, GSK resorted again to the same unsupported claim.

GSK's claim is a disguised attempt to re-litigate its unsuccessful Rule 12(b)(6) motion, which asserted: "[P]laintiffs and their insureds got what they paid for -- the benefit of their bargain." (Dkt. No. 38-2, at 17.) In rejecting GSK's motion, this Court held that Plaintiffs' allegations were legally sufficient and did not require proof that patients were harmed or that the drugs were ineffective. GSK has cited nothing in the discovery record that would change the Court's conclusion as a factual matter now.

In sum, this Court's question about *Kwikset* has a straightforward answer: *Kwikset* fully supports Plaintiffs' claims here, and as stated by the Third Circuit, *Kwikset* "does not conflict" with *Johnson & Johnson*.[1]

---

[1] Indeed, Plaintiffs' claims here are even stronger than those asserted in *Kwikset*, for a simple reason. In *Kwikset*, the plaintiffs' unwillingness to buy locksets with foreign

**2.     Unjust Enrichment**

Turning to Plaintiffs' unjust enrichment claim, the Court asked at the March 12 hearing whether Plaintiffs could establish the portion of Plaintiffs' payments that "made its way back to [GSK] as an unjust benefit." (Tr. p. 63, lines 7-9.)  In his rebuttal argument, GSK's counsel argued that although Plaintiffs have stated the amount that they spent on GSK's drugs, "[t]hey haven't said what we were enriched by," and therefore the unjust enrichment claim fails as a matter of law.  (Tr. p. 67, lines 7-11.)

In fact, Plaintiffs have no need to state the amount of GSK's enrichment, because GSK itself has stated that amount.  The discovery record includes a spreadsheet produced by GSK that lists its net sales and gross profits for each At-Issue Drug, broken down by year throughout the relevant period.  GSK's calculations provide an uncontested minimum for Plaintiffs' unjust enrichment claim at trial.[2]

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**
By: /s/ Peter St. Phillip
Gerald Lawrence
Peter St. Phillip
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
(215) 399-4770

---

components was a matter of consumer preference.  Continued sale of the locksets was perfectly legal as long as the manufacturer fully disclosed the source of the components.  Here, by contrast, Plaintiffs' unwillingness to pay for materially non-compliant drugs was *not* a matter of preference; it was a matter of legal requirements.  Under the Food, Drug, and Cosmetic Act, GSK could not legally sell its drugs even if GSK fully disclosed to Plaintiffs the non-compliant nature of the drugs.

[2]     GSK produced the spreadsheet in response to Plaintiffs' interrogatories on Feb. 14, 2018.  GSK designated the spreadsheet as "Confidential" under the Court's protective order.  If the Court wishes, Plaintiffs will file a copy of the spreadsheet under seal.

5

**GETNICK & GETNICK LLP**
Neil V. Getnick
Lesley Ann Skillen
Stuart Altschuler
521 Fifth Avenue, 33rd Floor
New York, NY 10175
(212) 376-5666

**LOWEY DANNENBERG, P.C.**
Geoffrey M. Horn
Uriel Rabinovitz
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer
Robert C. Griffith
One Eden Parkway
LaGrange, KY 40031
(502) 587-1279

**PROFESSOR G. ROBERT BLAKEY**
Professor of Law Emeritus
Notre Dame Law School*
7002 East San Miguel Avenue
Paradise Valley, AZ  85352
(574) 514-8220
[*Noted for identification only]

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Undersigned counsel certifies that on March 18, 2019 he served the foregoing Plaintiffs' Brief Regarding The March 12, 2019 Hearing On GSK's Motion For Summary Judgment by email on the following counsel:

>Joseph E. O'Neil
>John J. O'Donnell
>CAMPBELL CONROY & O'NEIL
>1205 Westlakes Drive
>Suite 330
>Berwyn, PA 19312
>
>Stephen J. Kastenberg
>David H. Pittinsky
>Leslie E. John
>Edward D. Rogers
>William B. Igoe
>BALLARD SPAHR LLP
>1735 Market Street 51st Floor
>Philadelphia, PA  19103
>
>Mark H. Lynch
>Matthew J. O'Connor
>Jason C. Raofield
>COVINGTON & BURLING LLP
>One City Center
>850 Tenth Street, N.W.
>Washington, DC  20001
>
>W. Mark Lanier
>THE LANIER LAW FIRM
>6810 FM 1960 Road West
>Houston, TX  77069

>/s/ Peter St. Phillip