UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLUE CROSS BLUE SHIELD ASSOCIATION, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>GLAXOSMITHKLINE LLC,<br><br>  Defendant. | Civil Action No. 2:13-cv-4663-JS |

**DEFENDANT GLAXOSMITHKLINE LLC'S RESPONSES
IN OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE***

GlaxoSmithKline LLC ("GSK") respectfully submits the following responses in opposition to plaintiffs' six motions *in limine*.

## 1. The Court Should Not Prevent GSK From Referring To Plaintiffs' Revenue, Profits, or Financial Condition

Plaintiffs' argument for barring any reference to their revenues, profits, or financial condition consists of the conclusory and incorrect statement that such evidence is irrelevant and unfairly prejudicial. Yet, such evidence is relevant to the jury determination of whether plaintiffs suffered an economic injury, and their claim for punitive damages.

First, plaintiffs' revenues, profits, and financial condition is relevant to rebutting plaintiffs' claim that the At-Issue Drugs were worthless. Plaintiffs contend that the FDA-approved At-Issue Drugs were worthless, even though they were consumed by plaintiffs' insureds for their intended therapeutic purpose and plaintiffs do not assert the drugs were ineffective or unsafe. The insurer plaintiffs charged their customers premiums (hundreds of billions of dollars) over the 2000-2005 time period. In such circumstances, it is both relevant and persuasive for GSK to respond that a jury ought not find the At-Issue Drugs economically worthless to these insurance companies when plaintiffs' reimbursements for them had no adverse effect on plaintiffs' revenues, profits or financial condition. *See, e.g.*, Cale (BCBS Alabama) Tr. at 588:6-7, 589:1-2 ("[W]e didn't lose money ... I can't say that we lost any premiums.")

Second, such evidence is relevant to plaintiffs' claim for punitive damages. In Pennsylvania, "the nature and extent of the harm" to the plaintiff is a factor in the punitive damages analysis. *Tunis Bros. v. Ford Motor Co.*, 952 F.2d 715, 740 (3d Cir. 1991) (quoting *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989)). The absence of a concrete financial harm, as evidenced by plaintiffs' revenues, profits and financial condition, undermines their claim for punitive damages. *See Rubin Quinn Moss Heaney & Patterson v. Kennel*, 832 F.

Supp. 922, 936 (E.D. Pa. 1993) (declining to award punitive damages on the grounds that "any recovery in excess of the loss" would represent "an unjust windfall"). Plaintiffs presumably will introduce evidence of GSK's financials for this reason; they cannot have it both ways.

Third, this evidence is not unfairly prejudicial to plaintiffs. In the sole case plaintiffs cite, *In re Urethane Antitrust Litigation*, No. 2:08-5169, 2016 U.S. Dist. LEXIS 15137, at *24–*25 (D.N.J. Feb. 8, 2016), the court excluded evidence regarding the plaintiffs' financial condition largely because it found the plaintiffs' financial position irrelevant in the context of a price-fixing class action. *Id.* (quotation omitted). By contrast, plaintiffs' revenues, profits, and financial conditions are relevant to their novel claim that the At-Issue Drugs were economically worthless to them and to their punitive damages claim. Such squarely relevant information put in play by own plaintiffs' claims and theories is not unfairly prejudicial.

2. **A Jury Instruction Can Address Plaintiffs' Potential Treble Damages Award**

GSK agrees that the issue of treble is not properly before the jury, but does intend to submit a proposed jury instruction premised on the ABA model instruction for treble damages.[1] Such an instruction ensures that any juror aware of trebling does not improperly persuade the jury to multiply the damages themselves. The "jurors might have some knowledge of" the availability of treble damages under the insurance fraud statute and the "curative instruction [would] alleviate confusion." *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1243 (5th Cir. 1974); *see also Real v. Continental Grp., Inc.*, 627 F. Supp. 434, 450 (N.D. Cal. 1986) ("Treble damage instructions have been approved . . . where necessary to avoid

---

[1] *See* ABA Model Jury Instructions in Civil Antitrust Cases F-52 (2005) ("You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three. You are not to try to do this yourself. This is the job of the court. In calculating damages, if any, you are only to try to determine actual or single damages.").

confusing the jury."); *Deutscher Tennis Bund v. ATP Tour, Inc.*, 07-cv-00178-GMS (D. Del. Aug. 4, 2008), D.E. 198, (giving ABA model instruction on treble damages); *Standard Indus., Inc. v. Mobil Oil Corp.*, 475 F.2d 220, 223 (10th Cir. 1973) (finding no error in "affirmatively instruct[ing] the jury that . . . the matters of trebling, costs and attorney's fees were 'no part of the jury's function' and were 'questions' for the court"), *cert. denied*, 414 U.S. 829 (1973).

### 3.   GSK Does Not Intend to Argue That Plaintiffs Could Have Raised or Should Now Raise Premiums on Their Insureds

Plaintiffs seek to exclude any suggestions that they would be able to avoid or mitigate financial injury through increased premiums. As plaintiffs suffered not one dime of financial harm, GSK does not intend to argue that plaintiffs could have or should have increased premiums to their insureds to mitigate damages, and therefore this motion is unopposed.

### 4.   Argument Concerning Plaintiffs' Plans For Any Jury Award Are Relevant to GSK's Defenses And Necessary To Avoid Unfair Prejudice to GSK

Plaintiffs seek to exclude evidence suggesting that they will retain the benefit of any award for themselves, arguing that what they intend to do with an award is irrelevant. Pls.' Mot. *in Limine* ("MIL"), D.E. 311 at 3. That is not the case here for three reasons.

First, plaintiffs claim damages on behalf of their self-funded plan customers who themselves – not plaintiffs – bear the cost of reimbursement for At-Issue Drugs. Relevant to this issue is whether plaintiffs will in fact pass any recovery on to the self-funded plans whose interests they claim to represent. It is far from certain that they will, which undermines their damages claim. *See, e.g.*, Barger (Avmed) Tr. 66:4-5 ("if we do recover settlement funds, we would **potentially** return those to the self-funded clients") (emphasis supplied).

Second, plaintiffs include 28 putative non-profit and mutual organizations. To the extent plaintiffs are so identified in the trial, or based on jurors' common knowledge, the jury may assume any monies collected will be passed on to insureds or used for charitable purposes,

and such assumptions would unfairly prejudice GSK. This is precisely why GSK has moved to bar plaintiffs from describing themselves as not-for-profit or mutual entities here, and courts have repeatedly barred such references in other cases. GSK MIL D.E. 323.

Even if GSK's motion *in limine* is granted however, that is not a full cure to the instant problem. With 26 plaintiffs being part of the Blue Cross family of licensees, an extremely well-known brand whose licensee insurers are generally understood to be not-for-profits, it is likely jurors will still believe that most plaintiffs are charitable institutions. Permitting GSK to make clear that these institutions have no plan or current intent to pass through any award to their insureds is thus necessary to avoid undue prejudice to GSK.

Third, regardless of what plaintiffs argue, the jury will understand the insureds are the ones that used – and in part paid for through copays – the drugs. Given that, the jury may assume plaintiffs are suing on behalf of their insureds or will pass through to their insureds the costs of the "worthless" drugs they took. GSK should be able to present this evidence to avoid this unfairly prejudicial, inaccurate jury confusion.

### 5. The Court Should Not Prevent GSK From Showing That Plaintiffs Have Not Shown Any Patients Were Harmed by GSK's Drugs

Plaintiffs ask the Court to bar "GSK from **suggesting** at trial . . . that 'no patients were harmed' by its drugs or that 'patients benefitted' from the drugs." Pls. MIL at 3-4 (emphasis added). Plaintiffs' arguments in support of that request are unavailing.

*a. GSK must be permitted to describe what Plaintiffs' claims are – and are not.*

Plaintiffs do not claim that any At-Issue Drugs were worthless based on any harm suffered by an insured, or on any insured not obtaining the therapeutic benefit of the drug. GSK MIL D.E. 315-7. It is critical GSK be able to describe for the jury what the allegations and claims in this case are – and are not. *See, e.g., McCoy v. Stewart*, Civ. No. 98-433, 2001 U.S.

Dist. LEXIS 23689, *12 (D. Ariz. Apr. 4, 2001) (no error when party, in opening argument, stated what evidence the jury would "**not** hear" or "see" during trial) (emphasis added). Otherwise, the jury's natural assumption may be that patients were harmed by the At-Issue Drugs or did not obtain the drugs' therapeutic benefits. Such an assumption – made without any support from any of the evidence produced in this case – would unduly prejudice GSK and likely confuse the jury. *See Fornicoia v. Haemonetics Corp.*, 131 F. App'x 867, 872 (3d Cir. 2005) ("[Evidence] is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provides its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.") (internal quote marks omitted).

### b. *The safety and effectiveness of GSK's drugs is relevant to determining the drugs' value and Plaintiffs' injury.*

Plaintiffs also rely on the Court's November 9, 2016 order addressing GSK's motion to dismiss to argue that the At-Issue Drugs' safety and effectiveness is irrelevant "to the financial injury Plaintiffs incurred." First, the Court did not so hold. Rather, it held that relevant to the deciding worthlessness was "the at-issue drugs' safety and effectiveness." D.E. 105 11–12.

Second, Plaintiffs' **own experts** confirm that a drug's safety and the benefits to patients are relevant to the value of a drug. Plaintiffs' expert Dr. Matthew Perri testified that the "[v]alue [of a drug] is measured in terms of utility to customers." Perri Tr. 64:2-3. Dr. Perri also agreed that "utility for customers" is measured partially by "benefits to patient health" and whether a drug "makes you better." *Id.* at 64:13-22. And, plaintiffs' expert Dr. David A. Kessler, in his report, "agree[d] with the FDA's statement" that if a "drug was not manufactured under conditions that comply with CGMP," it "does not mean that there is necessarily something wrong with the drug." Kessler Expert Report ¶¶ 32–33. Rather, "[t]he impact of CGMP violations depends on the nature of those violations and on the specific drugs involved." *Id.*

Indeed, "[s]ome CGMP violations do not . . . have a material impact on a drug." *Id.* ¶ 38. Given the combined testimony of Drs. Kessler and Perri (i) that the value of a drug depends at least in part on its utility and benefit to patients' health, and (ii) CGMP violations do not necessarily impact a drug–it is difficult to fathom how a reasonable jury could conclude the At-Issue Drugs were "worthless" when plaintiffs do not dispute that the At-Issue Drugs delivered their intended health benefits. GSK should thus be able to so argue at trial.

Third, GSK's economist expert likewise links the issues of patient benefit with economic value. Dr. Mohan Rao opined: "Dr. Conti [plaintiffs' economist] does not evaluate whether the at-issue drugs from GSK's Cidra facility were in any way associated with higher reported concerns of efficacy or safety. Thus, Dr. Conti fails to demonstrate any diminution of value of the at-issue drugs, let alone that they were 'worthless.'" Rao Expert Report ¶ 34.

Fourth, the lone case plaintiffs cite in support of their relevance argument, *Graves v. Plaza Med. Centers Corp.*, 2017 WL 3895438, at *2-3 (S.D. Fla. Sept. 6, 2017), is distinguished easily. In *Graves*, the Florida court granted the plaintiff's motion *in limine* and ordered that "defendants may not reference or offer evidence to imply that because [their] fraud caused no patient harm, **there is no fraud.**" *Id.* (emphasis added). Similarly here, GSK does not intend to argue that because no patients were injured there was no fraud (although GSK will vigorously argue there was no fraud). Rather, GSK will argue that because there is no evidence that the At-Issue Drugs were ineffective or harmful, the drugs were not worthless.

Fifth, addressing the lack of any allegations of harm to an insured or lack of efficacy is necessary to avoid juror confusion and unfair prejudice. As was evident from their summary judgment briefing, Pls' Response to GSK's Mot. Summ. J. 8-12, plaintiffs will surely invoke hyperbole and selective presentation of Cidra manufacturing problems to prejudice the

jury and implicitly urge it to conclude the At-Issue Drugs were in fact ineffective or unsafe to their insureds. *See also, e.g.*, Pls. MIL at 5 (referencing "releasing bacteria-contaminated drugs intended for cancer patients, infants, and other vulnerable patients.") Making clear to the jury that no such claim or evidence is being offered is critical to avoid this unfair prejudice to GSK.

In sum, under the Third Circuit's "very low threshold of relevancy," evidence that the At-Issue Drugs were safe and effective is relevant to determining the drugs' value and Plaintiffs' injury. *United States v. Long*, 574 F.2d 761, 765 n.11 (3d Cir. 1978).

### c. GSK has proffered evidence regarding the At-Issue Drugs' benefits.

Plaintiffs next argue that because GSK has no proof establishing "the absence of patient harms," or "benefits," it cannot suggest that its drugs were safe or effective. Pls' MIL at 4. As an initial matter, it is plaintiffs' burden to show worthlessness, not GSK's burden to disprove it. In any event, GSK's expert, Dr. David A. Horowitz, a respected medical internist at the Hospital of the University of Pennsylvania opined on the patient therapeutic benefits of each of the At-Issue Drugs. Horowitz Expert Report 5-9. Moreover, Aetna's corporate representative confirmed Aetna did not find any evidence that the At-Issue Drugs were not "working and helping the members as they've been intended," and that Aetna "receiv[ed] full value for the drugs that it was paying for." Brodeur Tr. 465:21-467:16, 560:24-561:17. Other plaintiffs confirmed that they had no evidence of patient harm. *See, e.g.*, Kowalski Tr. 136:19-137:19 (BCBS MA was not aware of any harm to any insured).

### d. Evidence that the At-Issue Drugs were safe and effective is not unfairly prejudicial, misleading, confusing, or a waste of time.

"The danger that [Rule 403] attempts to overcome is the unfavorable and potentially irrelevant emotional response that a fact-finder may assign to the evidence." *Ridley v. Costco Wholesale Corp.*, Civ. No. 04-3860, 2005 U.S. Dist. LEXIS 23276, at *19 (E.D. Pa. Oct.

7, 2005) (Sánchez, J.). Plaintiffs have not shown why evidence regarding the drugs' safety and effectiveness would cause an unfavorable or irrelevant emotional response from the jury—nor could they given that the drugs' safety and effectiveness is central to determining the drugs' value. On the contrary, as noted in Section 5.a, *ante*, this evidence and "suggestion" is needed to avoid unfairly prejudicing, misleading, and confusing the jury.

6. **The Court Should Not Allow Plaintiffs To Misleadingly Characterize SB Pharmco's Guilty Plea To Support Its Claims Against GSK**

Plaintiffs argue that the Court should prohibit GSK from making any statements that "are inconsistent with the admissions made by SB Pharmco in connection with its felony guilty plea." Pls. MIL at 4. In so doing, they significantly mischaracterize the scope of the "admissions made by SB Pharmco." The Court should deny plaintiffs' motion and adopt the approach set forth in GSK's motion in *limine* – evidence and argument regarding SB Pharmco's guilty plea should be excluded unless GSK denies the admissions that SB Pharmco necessarily made pursuant to its plea. GSK MIL, D.E. 317-1 at 3-6.

Plaintiffs' motion demonstrates the misleading and unfairly prejudicial manner in which they intend to use SB Pharmco's guilty plea at trial. For example, plaintiffs:

- Improperly characterize the Information filed against SB Pharmco in a misleading way designed to inflame the jury, *see* Pls.' MIL at 5;[2]

- Incorrectly assert that SB Pharmco and GSK admitted to all of the allegations in the Information such that GSK is "equitably and judicially estopped" from making any statements inconsistent with any of the allegations in the Information, *see id.* 5, 7;

- Inappropriately invoke the $600 million SB Pharmco and GSK paid pursuant to the civil settlement with the Government to establish the validity and amount of the claims that were at issue, *see id.* at 6;[3] and

---

[2] E.g., Plaintiffs wrongly aver SB Pharmco admitted to "releasing bacteria-contaminated drugs intended for cancer patients, infants, and other vulnerable patients." *Id.*

[3] The Court should exclude evidence and argument regarding the 2010 civil settlement and

- Falsely claim that plaintiffs were "third-party beneficiaries" of SB Pharmco's plea and GSK's side letter agreement such that GSK's liability has already been established and the only issue left for the jury is the amount of plaintiffs' recovery, *see id.* at 6-7.

Plaintiffs' assertions about the import of SB Pharmco's guilty plea are wrong as a matter of law and fact. Yet, based upon their recent briefs, it appears that these are some of the first arguments they intend to make as part of their opening statement. If plaintiffs are allowed to misleadingly frame the issues in this manner, it will infect the entire trial and result in irreparable prejudice to GSK. To avoid this, the Court should exclude evidence and argument regarding SB Pharmco's guilty plea unless GSK denies the admissions that SB Pharmco necessarily made pursuant to its plea, which it does not intend to do. *See* GSK MIL, D.E. 317-1 at 3-6.

### a. GSK Is Not Bound By Every Allegation In The Information Against SB Pharmco.

Plaintiffs assert, without any effort to address the applicable and contrary case law, that GSK "is equitably and judicially estopped" from making any statement inconsistent with any of the allegations set forth in the Information against SB Pharmco. Pls. MIL at 5-7. It is well-established that the collateral estoppel effect of SB Pharmco's guilty plea extends only to those issues "necessarily admitted in the plea" (*i.e.*, issues that the conviction "hinge[d] on"). *See Anderson v. C.I.R.*, 698 F.3d 160, 164-65 (3d Cir. 2012). "When a party invokes collateral estoppel based on a guilty plea, a court must examine the record of the criminal proceedings or plea colloquy to determine what issues were comprehended and decided." *State Farm Mut. Auto. Inc. Co. v. Rosenfield*, 683 F. Supp. 106, 108 (E.D. Pa. 1988). "[T]he party seeking to effectuate an estoppel[] has the burden of demonstrating the propriety of its application" and

---

the $600 million paid pursuant to that settlement. GSK MIL D.E. 317-1 at 6-9.

"reasonable doubt as to which issues were decided . . . should be resolved against . . . estoppel." *Chisholm v. Def. Logistics Agency*, 656 F.2d 42, 48 (3d Cir. 1981).

Without any legal support, plaintiffs take the remarkable position that SB Pharmco admitted to all of the allegations in the Information because it pleaded guilty to Count 1, the first paragraph of which included boilerplate language incorporating by reference all prior paragraphs of the Information. *See* Pls. MIL at 5-6. As the Court is well aware, the Information sets forth the Government's accusations and is designed to "give the defendant fair notice of the charges against him." *See* Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 123 (4th ed.) ("The contents of [an] indictment are not evidence of guilt."). The Information is the Government's statement of allegations. The defendant does not sign it and need not "necessarily admit" to every allegation for there to be a sufficient basis to support the charges therein.

SB Pharmco's plea colloquy reveals the narrow set of issues "comprehended and decided" pursuant to the plea, and that therefore may be established as to SB Pharmco. *See, e.g., State Farm Mut. Auto. Inc. Co.*, 683 F. Supp. at 108.[4] Namely, SB Pharmco pleaded guilty to introducing for delivery into interstate commerce certain adulterated lots of four products – one of which is not an At-Issue Drug – manufactured at various specific times during a 19-month period. *See, e.g.*, Pls. MIL, Ex. E. at 9:10-15:7. SB Pharmco did not admit to every allegation in the Information, and neither the court nor the Government suggested otherwise. Before entering judgment on the plea, the Court had to determine that the "factual basis" for the plea – which the Government described during the hearing – "constitute[d] the offense charged in the

---

[4] *See also, e.g., United States ex rel. Doe v. Heart Solution PC*, 923 F.3d 308, 316 (3d Cir. 2019) (a court must examine "the record of the criminal proceeding, including the plea colloquy"); *United States v. Summers*, 254 F. Supp. 2d 589, 593 (E.D. Pa. 2003) ("a more stringent standard is applied when a party wishes to invoke collateral estoppel based on a prior guilty plea" and reviewing plea colloquy to determine which issues were decided).

information." *See* Fed. R. Crim. P. 11, Advisory Comm. Notes (explaining the purpose of the "factual basis" requirement in Rule 11); Pls. MIL, Ex. E. at 9:10-15:7. Thus, plaintiffs cannot credibly assert that SB Pharmco's conviction actually "hinge[d] on" allegations that were not addressed during that colloquy. *Anderson*, 698 F.3d at 164-65. Further, after the Government's recitation of this basis in fact, SB Pharmco acknowledged "a sufficient basis in the evidence to support the guilty plea," and the court accepted the plea without requiring SB Pharmco to admit to any additional facts from the Information or otherwise. *See* Pls. MIL, Ex. E. at 15:10-13.

GSK's side letter with the Government does not change the analysis. There, GSK agreed it would not "make statements inconsistent with th[e] explicit admission of guilt by SB Pharmco **to the crime** charged in the Information." Pls. MIL, Ex. B at 3 (emphasis added). Thus, GSK agreed it would not contradict SB Pharmco's admission that SB Pharmco was guilty of introducing into interstate commerce certain quantities of four drugs adulterated in violation of the FDCA. The side letter did not require GSK to adopt every allegation included in the Information. And GSK certainly did not agree to be bound by a broader set of "admissions" than that to which SB Pharmco would be bound under collateral estoppel.

Plaintiffs' motion illustrates the improper, misleading, and prejudicial arguments that plaintiffs intend to make about the scope and estoppel effect of SB Pharmco's plea. For example, plaintiffs allege SB Pharmco admitted "releasing a . . .super-potent and sub-potent diabetes drug" (*i.e.*, Avandamet) and "bacteria contaminated drugs intended for cancer patients" (*i.e.*, Kytril). Pls. MIL at 5. Neither the Information nor the prosecutor's statement during the plea colloquy alleged "contaminated" Kytril or super/sub-potent Avandamet were actually released to the market. Rather, the Government stated that certain lots of Kytril and Avandamet made during a narrow timeframe were adulterated because of cGMP deficiencies in the

manufacturing processes and testing procedures. *See Id.*, Ex. E at 11:9-13, 14:6-10; *see also id.*, Ex. C at ¶¶ 27, 70. Plaintiffs' mischaracterization of SB Pharmco's plea is also likely to confuse and mislead the jury given the substantial disparity between the scope of the plea (which addressed only certain lots of three At-Issue Drugs from a 19-month period) and plaintiffs' claims against GSK (which relate to every lot of 17 At-Issue Drugs from a six-year period). *See* GSK MIL 317-1 at 4-5 (explaining limited probative value and prejudicial nature of SB Pharmco's plea in light of disparity between the scope of SB Pharmco's plea and plaintiffs' claims against GSK).

### b. *GSK Has Not Disavowed SB Pharmco's Plea And Will Not Do So At Trial.*

To support their motion, plaintiffs assert GSK has "attempted to disavow the admissions made by SB Pharmco in its guilty plea." Pls. MIL at 5. This is not true. For example, GSK's 30(b)(6) deponent Kirk Brown testified, "[GSK's] management acknowledges that SB Pharmco Puerto Rico has entered a plea of guilty for the offense." Brown Tr. at 486:8-21; *see also id.* at 392:24-393:2. More importantly, GSK does not intend to make statements at trial inconsistent with what SB Pharmco "necessarily admitted in the plea" (*i.e.*, issues that may have estoppel effect as to SB Pharmco, as described above). *See* GSK MIL D.E. 317-1 at 3-6.

Plaintiffs seek to make much of the fact that Mr. Brown stated his belief that SB Pharmco "was not required to admit to the individual details of every[]" allegation in the Information. *See* Pls. MIL at 6 & n.2 (citing Brown Tr. at 392:19-23).[5] Mr. Brown's testimony was an accurate statement of the guilty plea process and consistent with principles of collateral

---

5   Plaintiffs' claim Mr. Brown testified "GSK was not bound by any of the allegations" in the Information is not supported by the record. *See* Pls. MIL at 6. As demonstrated by the testimony plaintiffs cite, Mr. Brown disagreed with the much broader assertion that SB Pharmco admitted to <u>every</u> allegation in the Information.

estoppel, described above. *See also, e.g.*, Brown Tr. at 486:15-488:12 (looking to the transcript of the plea colloquy to inform his opinion regarding the allegations to which SB Pharmco pleaded guilty). In addition, plaintiffs' questions as to the extent of SB Pharmco's admissions were not properly within the scope of the 30(b)(6) deposition. *See, e.g., id.* at 405:17-406:12 (explaining that the topics in plaintiffs' notice covered GSK management's knowledge of and actions regarding the circumstances alleged in the Information, not whether GSK agrees with those allegations). In any event, Mr. Brown was clear throughout his testimony that it was "not [his] intent . . . nor [did he] believe [he'd] made any express statements" contrary to the explicit admission of guilt by SB Pharmco. *See id.* at 364:2-9.

        c. *Plaintiffs Were Not Intended "Third-Party Beneficiaries."*

Plaintiffs' motion also makes clear they intend to argue at trial that SB Pharmco's guilty plea and GSK's side letter with the Government "effectively provided insurers, as third-party beneficiaries of the agreement, with a basis for pursuing their own remedies against GSK in subsequent proceedings." *See* Pls. MIL at 7. But, plaintiffs are not "third-party beneficiaries" of these agreements. There is no "clear and definite" indicia that the parties to these agreements intended that private insurers would be third-party beneficiaries. *See Rymes Heating Oils, Inc. v. Springfield Terminal Ry., Inc.*, 265 F. Supp. 2d 147, 151 (D. Mass. 2003) (intent to establish a third-party beneficiary must "be clear and definite"); *see also, Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008) (general rule is that both contracting parties must have expressed a clear intention for a third-party to be a beneficiary). GSK's side letter agreement does not refer to any potential third parties. And the plea agreement between SB Pharmco and the Government explicitly states that "the appropriate disposition of this case does not include a restitution order". *See* Pls. MIL Ex. D at 3. Indeed, consistent with the plea agreement, the Court did not order any restitution to any third party when it entered the

judgment. *See* Ex. 1 (Judgment, *United States v. SB Pharmco Puerto Rico, Inc.*, No. 10-10355-JLT (D. Mass.)). Moreover, plaintiffs cannot use their current claims against GSK under Pennsylvania law as a backdoor appeal of the prior court's decision to not order SB Pharmco to pay restitution. *Cf., e.g., United States v. Stoerr*, 695 F.3d 271, 276-278 (3d Cir. 2012) (crime victims do not have standing to appeal a restitution order).

Plaintiffs' related claim that the restitution-related language in SB Pharmco's plea agreement is evidence of an admission of plaintiffs' injury or that plaintiffs are entitled to recover from GSK fails for similar reasons. The agreements do not contain any admission that private insurers were injured or that they were entitled to prevail in a subsequent civil proceeding against GSK. *See* GSK MIL D.E. 316.

Plaintiffs' continued recitation of these specious arguments underscores why the Court should deny plaintiffs' motion, D.E. 311, and grant GSK's motions regarding SB Pharmco's guilty plea, D.E. 316 and D.E. 317. For the reasons stated in GSK's motions and above, the grave risk that evidence of SB Pharmco's guilty plea will mislead the jury, confuse the issues, and result in irreversible prejudice substantially outweighs the minimal probative value of the plea, especially in light of the legally unsupported and factually incorrect arguments plaintiffs intend to make. The Court should not allow plaintiffs to dodge their burden to prove their claims against GSK by misinforming the jury that every allegation against non-party SB Pharmco in the Information (as misleadingly presented by plaintiffs) is an established fact, and that GSK has already conceded plaintiffs were injured and are entitled to restitution.

\* \* \*

For all the foregoing reasons, plaintiffs' motions *in limine* should be denied, except as otherwise stated herein.

Respectfully submitted,

BY: /s/ SK
    Stephen J. Kastenberg
    David H. Pittinsky
    Leslie E. John
    Edward D. Rogers
    William B. Igoe
    BALLARD SPAHR LLP
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103
    Phone: 215-665-8500

    Matthew J. O'Connor (*pro hac vice*)
    Jason Raofield (*pro hac vice*)
    COVINGTON & BURLING LLP
    One CityCenter
    850 Tenth Street NW
    Washington, DC 20001
    Phone: 202-662-6000

*Attorneys for Defendant GlaxoSmithKline LLC*

W. Mark Lanier (*pro hac vice*)
Jonathan P. Wilkerson (*pro hac vice*)
Alex J. Brown (*pro hac vice*)
THE LANIER LAW FIRM
10940 West Sam Houston Pkwy N, Suite 100
Houston, TX  77064
Phone: 713-659-5200

Joseph E. O'Neil
John J. O'Donnell
CAMPBELL, CONROY & O'NEIL, P.C.
1205 Westlakes Drive Suite 330
Berwyn, PA 19312