IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BLUE CROSS BLUE SHIELD ASSOCIATION,** *et al.***,**

        **Plaintiffs,**

vs.

**GLAXOSMITHKLINE LLC,**

        **Defendant.**

Civil Action No. 2:13-cv-4663-JS

**PLAINTIFFS' OPPOSITION TO GSK'S MOTIONS TO PRECLUDE
CLAIMS BASED ON "OUT-OF-STATE PURCHASES" (Dkt. No. 313), AND
CLAIMS ON BEHALF OF "SELF-FUNDED PLANS" (Dkt. No. 314)**

GSK has filed two purported "motions in limine" that are actually disguised -- and facially improper -- motions for partial summary judgment. One motion, Dkt. No. 313, seeks to "preclude" all claims based on pharmacy transactions in 49 out of the 50 states, leaving only claims based on transactions within Pennsylvania. The other motion, Dkt. No. 314, seeks to "preclude" all claims asserted on behalf of Plaintiffs' "self-funded" customers, which GSK argues will eliminate "more than 40%" of the damages in this case. Both motions are defective in at least two respects:

*First,* GSK neglected to raise the grounds for both motions in its Rule 12(b)(6) motion (Dkt. No. 38-2), in its answer to the complaint (Dkt. No. 115), and in its Rule 56 motion (Dkt. No. 270). Under settled law, both motions have been waived.

*Second,* GSK's filings are effectively motions for partial summary judgment aimed at dismissing enormous subsets of Plaintiffs' claims. They are dispositive motions of the type brought under Rule 56, which contemplates motions for dismissal of a "claim," a "defense," or a "part" of a claim or defense. Fed. R. Civ. P. 56(a). This Court set November 7, 2018 as the

deadline for all "dispositive" motions.  (Revised Case Management Order, Dkt. No. 192.) GSK's current motions missed that deadline by almost a year.

After all of the time and effort spent by the Court and Plaintiffs in addressing the issues raised by GSK's summary judgment motion, filed nearly a year ago and decided by the Court on September 30, 2019, GSK cannot raise further dispositive issues three weeks before trial.  GSK's untimely attempt to resurrect waived issues violates not only the Federal Rules of Civil Procedure and this Court's Case Management Order but also basic principles of fairness and due process.  GSK's motions should be denied.

**I.      GSK's Motion Regarding "Out-Of-State" Transactions (Dkt. No. 313) Has Been Waived, And Is Substantively Defective**

GSK argues that Plaintiffs' state law claims are based solely on Pennsylvania law, which cannot be applied outside Pennsylvania's borders, and therefore the Court should "preclude" all claims based on pharmacy transactions in the 49 other states.  (Dkt. No. 313-1, at 1-2.)  As shown below, GSK has waived this argument.  Over the course of more than six years of litigation, GSK never raised the issue before.

Moreover, even if GSK's argument were accepted at face value, the necessary result would ***not*** be preclusion of Plaintiffs' "out-of-state" claims.  Instead, the result would be a trial of those claims under the laws of the 49 other states, with necessary jury instructions that GSK has failed to propose.  Indeed, GSK ignores the fact that with respect to a large number of common law fraud claims, Plaintiffs' burden of proof would be ***reduced*** from Pennsylvania's "clear and convincing" standard to a preponderance standard, and the jury would have to be instructed accordingly.  GSK's proposed jury instructions make no attempt to address this or any other issue under the laws of any state apart from Pennsylvania.

By failing to address any other states' laws in its jury instructions, GSK again confirms that its motion regarding "out-of-state" transactions has been waived. This case proceeded for more than six years through the briefing and argument of GSK's Rule 12(b)(6) motion, lengthy document and deposition discovery, and the briefing and argument of GSK's Rule 56 motion, and not once did GSK raise any issue concerning the law applicable to "out-of-state" transactions. GSK also remained silent on this issue when it answered Plaintiffs' original complaint and amended complaint.

In fact, GSK has been more than merely silent. Throughout the litigation, GSK has affirmatively *invoked* Pennsylvania law -- and Pennsylvania law alone -- when addressing Plaintiffs' state law claims. For example, GSK's Rule 12(b)(6) motion relied on Pennsylvania law exclusively when it analyzed the essential elements of Plaintiffs' state law claims and the statute of limitations applicable to each claim. (Dkt. No. 38-2, at 13-14, 19-20.) Similarly, GSK's Rule 56 motion challenged Plaintiffs' state law claims solely under Pennsylvania law. (Dkt. No. 270, at 20-25, 44-45.) Neither of those motions said anything about "out-of-state" transactions or choice of law.[1]

Indeed, even now, in its companion motion regarding "self-funded" customers (Dkt. No. 314), GSK invokes Pennsylvania law as applicable to claims asserted on a nationwide basis. As discussed in Point II below, GSK's motion argues that all claims asserted on behalf of self-funded customers are barred by Pennsylvania's statute of limitations and other Pennsylvania law. (Dkt. No. 314-1, at 10-11 & nn. 42-43.) Plaintiffs' self-funded customers number in the thousands, are located throughout the country, and have paid for pharmacy transactions in all 50

---

[1] In addition, during the March 12, 2019 hearing on GSK's summary judgment motion, GSK's counsel continued to discuss Plaintiffs' state law claims solely under Pennsylvania law. (See Tr. at 6:23-8:3, 21:10-13.)

3

states. GSK's assertion that the nationwide claims of those self-funded customers are governed by Pennsylvania law reiterates what GSK has been saying throughout this case about Plaintiffs' claims in general: Pennsylvania law applies to them all.[2]

Plaintiffs have spent years developing the discovery record and preparing for trial with reference to the requirements of Pennsylvania law. GSK's belated motion three weeks before trial improperly seeks to upend all of those efforts. Given GSK's stated positions throughout this litigation, GSK has waived its last-minute objection to the application of Pennsylvania law to "out-of-state" transactions.

### A. Under Settled Law, GSK's Motion Has Been Waived

Federal courts must follow the forum state's choice-of-law rules, including its waiver rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941). Under Pennsylvania's rules, "issues involving choice of law are not jurisdictional and may be waived if not raised." *National Grange Mut. Ins. Co. v. Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr*, 142 F. App'x 117, 124 (3d Cir. 2005); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) (finding waiver); *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 180 (3d Cir. 1995) (en banc) ("choice of law issues may be waived").[3]

Pennsylvania provides in 42 Pa. C.S.A. § 5327(a): "A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth

---

[2]   GSK's motion regarding self-funded customers begins by stating that Plaintiffs seek a total of $2.7 billion in damages, and self-funded customers represent "more than 40% of that amount -- $1.15 billion." (Dkt. No. 314-1, at 1.) Those damages numbers are nationwide, not Pennsylvania-specific. The motion goes on to argue that all claims by self-funded customers are governed by Pennsylvania law. (*Id.* at 10-11 & nn. 42-43.)

[3]   *See also Lott v. Levitt*, 556 F.3d 564, 567-68 (7th Cir. 2009); *In re Newport Plaza Assocs., L.P.*, 985 F.2d 640, 643-44 (1st Cir. 1993) (where parties briefed and argued the case on the "apparent understanding" that one state's laws applied, the court was "at liberty to accept such an agreement without independent inquiry").

4

shall give notice in his pleadings or other reasonable notice." After more than six years of litigation, providing "notice" a mere 21 days before trial cannot qualify as "reasonable."

### B. In Addition, GSK's Motion Is Substantively Defective

Even if GSK were correct in arguing that "out-of-state" claims are subject to other states' laws, nothing in GSK's argument supports the remedy it seeks, namely, ***preclusion*** of all of those claims. At most, GSK's argument leads to the result that such claims remain viable and should be presented at trial under other states' laws -- with necessary jury instructions that GSK has failed to propose. Indeed, such instructions would actually reduce Plaintiffs' burden of proof from the "clear and convincing" standard to a "preponderance" standard with respect to a large number of fraud claims. (In arguing that other states' laws differ from Pennsylvania's, GSK acknowledges that the "preponderance" standard governs common law fraud claims at least in California. See Dkt. No. 313-6.) As already discussed, there is no need to try this case under the laws of other states because GSK has waived its argument and proceeded solely under Pennsylvania law. By making a meritless request for claim preclusion rather than a trial under other states' laws, GSK has confirmed that its motion is legally defective even on its own terms.

GSK's motion is legally defective in another way as well. While paying lip service to Pennsylvania's flexible "most significant relationship" analysis, GSK falls back on the archaic *lex loci delicti* rule and focuses mechanically on what GSK characterizes as the "place of injury" -- supposedly, the place where each pharmacy transaction occurred. There are at least two problems with GSK's position.

*First,* as GSK acknowledges in passing but never properly addresses, Pennsylvania's "most significant relationship" analysis focuses not just on (a) the supposed place of injury but also on (b) where the misconduct occurred, (c) where the parties are located, and (d) where the

parties' relationship was centered. *See Restatement (Second) of Conflict of Laws* § 145(2). GSK recites factors (b) through (d) but then fails to apply them. Under all three of those tests, Pennsylvania has important interests in applying its own substantive law. GSK used Pennsylvania as its base of operations for a nationwide scheme in which GSK fraudulently caused Plaintiffs to maintain Cidra's products on their formularies and then automatically issue payments whenever -- *and wherever* -- their insureds filled prescriptions for the drugs. No other state has a weightier interest than Pennsylvania in applying its own law to this nationwide scheme.

*Second,* even if the place of injury were controlling, GSK gets that place wrong. The relevant place is not where the pharmacy transaction occurred. The location of the pharmacy is entirely fortuitous and has no essential connection to GSK's fraud on the insurers. For example, BCBS of Alabama would cover the costs of a GSK drug if one of its Alabama insureds filled three prescriptions for the drug while traveling through the Northeast -- the first in New York, the second in Connecticut, the third in Massachusetts. According to GSK's argument, BCBS of Alabama would have to assert separate claims against GSK under the laws of each of those three states, even though the insurer paid for the same drug on behalf of the same insured as a result of the same nationwide fraud that GSK orchestrated in Pennsylvania. As this Court noted in its Rule 56 decision (Dkt. No. 295, at 36-37), GSK's alleged fraud was *not* directed against doctors when they wrote prescriptions, or patients when they filled prescriptions at their pharmacies -- unlike the "off-label marketing" and other cases that GSK has typically relied on, where doctors or consumers were targeted.

Thus, GSK's insistence on the location of the pharmacy transaction is misguided. Pennsylvania has the paramount interest in applying its substantive law to the distinctive facts in

this case.  Indeed, none of the cases cited by GSK -- for either its "choice of law" argument or its "presumption against extra-territoriality" argument -- addresses a situation like the one presented here.  When a Pennsylvania drug company fraudulently induces healthcare insurers throughout the country to pay for pharmacy transactions *regardless of where those transactions take place*, Pennsylvania has a stronger interest than any other state in applying its own law.

## II. GSK's Motion Regarding "Self-Funded" Customers (Dkt. No. 314) Also Has Been Waived

Like GSK's motion regarding "out-of-state" transactions, discussed above, GSK has waived its motion concerning Plaintiffs' claims on behalf of self-funded customers (Dkt. No. 314).  GSK argues that Plaintiffs lack the authority to assert such claims and therefore are not the "real parties in interest," as required by Fed. R. Civ. P. 17.  Under settled law, however, a "real party in interest" objection is waived unless it is promptly and specifically raised by a pleading or motion.  GSK has plainly failed to do so.

Unlike issues of standing, which are "jurisdictional," the "real party in interest" requirement is a "prudential limitation" on a court's power to adjudicate cases.  *E.g.*, *The Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 576-77 (E.D. Pa. 2010).  The limitation is therefore subject to waiver.  *Id.* at 578-79 (citing cases); *Sullivan v. Warminster Twp.*, 2013 WL 1934532, at *2 (E.D. Pa. May 9, 2013).

GSK has known from the start that Plaintiffs were asserting claims both for themselves and on behalf of self-funded customers.  Plaintiffs' original complaint alleged:

> Plaintiffs, either directly or through their health plan subsidiaries, insure and administer health plan benefits for their members and group customers, ***including self-funded group customers that contract with Plaintiffs and their health plan subsidiaries to administer claims on their behalf and to pursue recoveries related to those claims***.  Many of these health plan benefits provide members with prescription drug coverage under which claims for drugs manufactured by GSK at the Cidra Plant were submitted and paid.

7

(Dkt. No. 1-1, ¶ 56, emphasis added.)

GSK remained silent regarding Plaintiffs' self-funded customer claims when it moved to dismiss the complaint under Rule 12(b)(6). (Dkt. No. 38-2.) After the Court denied that motion, GSK filed an answer to the complaint and again failed to raise the issue. In response to the allegation quoted above, GSK's answer said nothing more than this: "Defendant avers that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 56." (Dkt. No. 115, ¶ 56.) This was legally inadequate. Rule 9(a), which refers to "capacity or authority to sue," required that GSK plead any challenge "by a specific denial," with a statement of "any supporting facts that are peculiarly within [GSK's] knowledge." Fed. R. Civ. P. 9(a)(2).[4]

By failing to make the necessary "specific denial," GSK waived its defense. *See, e.g.*, *Sullivan v. Warminster Twp.*, 2013 WL 1934532, at *2 (E.D. Pa. May 9, 2013) (a capacity to sue defense is waived unless raised by specific denial); *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000) (a defendant "must challenge a plaintiff's authority to sue by

---

[4] GSK has long had specific knowledge that insurers pursue claims on behalf of their self-funded customers as a matter of industry practice, because GSK *itself* is a self-funded customer that has benefitted from the practice. In numerous cases, Aetna has sued on GSK's behalf as the administrator of GSK's retiree prescription benefit plan and has distributed the resulting recoveries to GSK. Thus, GSK wants to have it both ways: as a customer, GSK benefits from Aetna's prosecution of claims on its behalf, but as a defendant, GSK argues that Aetna lacks the authority to do so. Cases in which Aetna has recovered funds on GSK's behalf include: *Aetna Inc. v. Pfizer Inc. et al.*, No. 1:04-cv-10981-PBS (D. Mass.); *In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. M:05-CV-01699-CRB (N.D. Cal.); *In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10981-PBS (D. Mass.); *In re Flonase Antitrust Litig.*, No. 2:08-cv-3301 (E.D. Pa.); *In re Cipro Cases I & II*, No. JCCP 4154/4220 (Cal. Super. Ct., San Diego Cty.); *In re Vytorin/Zetia Mktg., Sales Practices & Prod. Liab. Litig.*, Master Docket No. 08-0285 (D.N.J.); *In re Lipitor Antitrust Litig.*, Master Docket No. 3:12-cv-2389 (D.N.J.); *In re Wellbutrin SR Antitrust Litig.*, Civ. No. 04-5525 (E.D. Pa.); *In re DDAVP Indirect Purchaser Antitrust Litig.*, No. 05 Civ. 2237 (S.D.N.Y.); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-2343 (E.D. Tenn.); *Doryx Indirect Purchaser Antitrust Litig.*, No. 12-3824 (E.D. Pa.).

making a specific negative averment," which "must be made in the responsive pleading or by motion before pleading") (internal quotation marks omitted); *FDIC v. Horn*, 2015 WL 1611995, at *11 (E.D.N.Y. Apr. 8, 2015) (defense is waived unless asserted "with the requisite diligence"); *Pressman v. Estate of Steinvorth*, 860 F. Supp. 171, 176 (S.D.N.Y. 1994) (defense was waived when "not raised in a timely manner, i.e., at the outset of the lawsuit").[5]

Many months after it answered the complaint, GSK referred for the first time to Plaintiffs' self-funded customer claims in certain discovery requests, but still made no attempt to plead a Rule 17 defense. Then, more than *five years* after it answered Plaintiffs' original complaint, GSK made an inadequate attempt to cure its default. GSK answered Plaintiffs' amended complaint with this boilerplate denial: "Defendant denies that Plaintiffs are entitled, obligated, or allowed to pursue recoveries related to claims paid by self-funded group customers." (Dkt. No. 211, ¶ 54.) GSK also added a "Fortieth Defense," which stated in its entirety: "Plaintiffs lack the capacity to sue on their alleged claims." (*Id*. p. 61.) These conclusory averments were far too little, far too late. Even after five years of litigation, GSK still failed to make a "specific denial" with "supporting facts," as required by Rule 9(a)(2).[6]

---

[5]  Rule 9(a)'s "specific denial" requirement encompasses not only the issue of whether a plaintiff has "capacity or authority to sue" but also whether a plaintiff qualifies as the "real party in interest" under Rule 17(a). Indeed, the Third Circuit has held that the "focus of [Rule 17] is on capacity to sue." *McSparran v. Weist*, 402 F.2d 867, 869 (3d Cir. 1968); *see also U.S. Bank Nat'l Ass'n v. Gunn*, 31 F. Supp. 3d 636 (D. Del. 2014) (servicing agreement gave plaintiff right to sue for the benefit of a third party under Rule 17(a)(1)(F)).

[6]  GSK also misrepresents the scope of Plaintiffs' contracts with self-funded customers. To begin with, GSK refers to contracts from only eight of the 24 Plaintiffs that assert claims on behalf of self-funded customers. That alone provides a sufficient basis for denying GSK's motion, which is directed against all 24. In addition, GSK concedes that BCBS Alabama has comprehensive authority to pursue claims "arising in contract, tort, or any legal theory 'on behalf of self-funded plans.'" (Dkt. No. 314-1, at 6 & n.17, citing Exhibit 18, BCBS-AL00002151, at -2155.) Similarly, GSK quotes BCBS Massachusetts' contractual authority "to 'pursue claims paid as a result of fraud and abuse,'" which undoubtedly encompasses at least common law and statutory fraud claims. (Dkt. No. 314-1, at 6 & n.18, citing Exhibit 19, BCBS-MA00142039, at -

Moreover, GSK's Rule 56 motion -- its last pretrial opportunity to challenge Plaintiffs' claims -- again omitted the "real party in interest" defense. GSK apparently decided that the defense was not worth mentioning even though, according to GSK, it eliminates "more than 40%" of the damages claimed in this case. (Dkt. No. 314-1, at 1.)[7]

Finally, GSK's "real party in interest" argument, if accepted, would delay the trial indefinitely and cause enormous unfair prejudice. GSK ignores the express language of Rule 17(a), which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, *a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action*. *After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest*.

Fed. R. Civ. P. 17(a)(3) (emphasis added). In direct violation of the Rule, GSK asks the Court to "preclude" all claims by self-funded customers without giving them the opportunity to "ratify, join, or be substituted into the action."[8]

---

142049.) Furthermore, GSK omits that provision's additional reference to "other appropriate recovery operations," which is broad enough to cover warranty and other claims. Finally, GSK cites in a footnote -- but then ignores -- testimony from Plaintiffs' representatives that the pursuit of claims on behalf of self-funded customers is an acknowledged industry practice. (Dkt. No. 314-1, at 5 n.13.)

[7] By contrast, GSK's summary judgment motion argued that accounting for "rebates" required a reduction of Plaintiffs' damages by an estimated 8%. (See Dkt. No. 270, at 38 n.30; Dkt. No. 275, at 31 n.11.)

[8] GSK also argues that, whether they appear in person or by authorized proxy, each self-funded customer at trial must separately prove that GSK made a misrepresentation *to that customer* upon which the customer relied to its detriment, and must also separately rebut GSK's statute of limitations defense by proving its own lack of inquiry notice. (Dkt. No. 314-1, at 10-12.) GSK's argument is substantively baseless. Under the contracts, Plaintiffs acted as agents for their self-funded customers in deciding whether drugs should be listed on formularies and consequently paid for by the customers. Fraud on the agent constitutes fraud on the principal. While (belatedly) disputing Plaintiffs' authority to sue, GSK never disputes the agency relationship between Plaintiffs and their self-funded customers.

10

This demonstrates why GSK's failure to assert a "real party in interest" defense at the appropriate time is patently prejudicial. If GSK thought its defense had any merit, it should have sought a ruling on the defense years ago. If the Court ruled in GSK's favor, the requirements of Rule 17(a) could have been met by allowing a "reasonable time" for ratification, joinder, or substitution. Instead, GSK waited until 21 days before trial. Because Plaintiffs' self-funded customers number in the thousands, an orderly process of ratification, joinder, or substitution would require an indefinite postponement of the trial. Moreover, if a significant number of those customers decided to join as parties, the Court would be required to develop further procedures to avoid a hopelessly complicated and unwieldy trial. In short, granting GSK's motion would impose unnecessary burdens on the Court and cause undue prejudice to Plaintiffs.

This Court has already emphasized that a trial in this case is long overdue. GSK previously attempted to delay the trial by moving for interlocutory review under 28 U.S.C. § 1292(b). In denying GSK's motion, the Court stated:

> [T]his protracted litigation has languished in this Court for more than *six* years. At this point, all discovery has been completed, the Court has ruled on GSK's extensive motions for summary judgment and to exclude expert testimony, and trial has been scheduled for November 12, 2019. All that remains is for the parties to try this case.

(Dkt. No. 327, at 2 n.1, emphasis by the Court.) GSK's untimely invocation of Rule 17 is yet another meritless attempt to derail the trial. Its motion should be denied.

## Conclusion

The Court should deny GSK's motions to preclude claims based on "out-of-state purchases" (Dkt. No. 313) and preclude claims on behalf of "self-funded plans" (Dkt. No. 314).

Dated:  November 1, 2019						Respectfully submitted,

**LOWEY DANNENBERG, P.C.**
By: /s/ Peter St. Phillip
Peter St. Phillip
Geoffrey M. Horn
Uriel Rabinovitz
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500

**GETNICK & GETNICK LLP**
Neil V. Getnick
Lesley Ann Skillen
Stuart Altschuler
521 Fifth Avenue, 33rd Floor
New York, NY 10175
(212) 376-5666

**LOWEY DANNENBERG, P.C.**
Gerald Lawrence
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
(215) 399-4770

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer
Robert C. Griffith
One Eden Parkway
LaGrange, KY  40031
(502) 587-1279

**THE BREEN LAW FIRM**
James J. Breen
5755 North Point Parkway, Suite 260
Alpharetta, GA  30022
(678) 735-5052

**PROFESSOR G. ROBERT BLAKEY**
Professor of Law Emeritus
Notre Dame Law School*
7002 East San Miguel Avenue
Paradise Valley, AZ  85352
(574) 514-8220
[*Noted for identification only]

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on November 1, 2019 I served the foregoing Plaintiffs' Opposition to GSK's Motions to Preclude Claims Based on "Out-Of-State Purchases" (Dkt. No. 313) and Claims on Behalf of "Self-Funded Plans" (Dkt. No. 314) by email on the following counsel:

>Joseph E. O'Neil
>John J. O'Donnell
>CAMPBELL CONROY & O'NEIL
>1205 Westlakes Drive
>Suite 330
>Berwyn, PA 19312
>
>Stephen J. Kastenberg
>David H. Pittinsky
>Leslie E. John
>Edward D. Rogers
>William B. Igoe
>BALLARD SPAHR LLP
>1735 Market Street 51st Floor
>Philadelphia, PA  19103
>
>Mark H. Lynch
>Matthew J. O'Connor
>Jason C. Raofield
>COVINGTON & BURLING LLP
>One City Center
>850 Tenth Street, N.W.
>Washington, DC  20001
>
>W. Mark Lanier
>THE LANIER LAW FIRM
>6810 FM 1960 Road West
>Houston, TX  77069

/s/ Peter St. Phillip