IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BLUE CROSS BLUE SHIELD ASSOCIATION**, *et al.*,<br><br>    **Plaintiffs**,<br><br>vs.<br><br>**GLAXOSMITHKLINE LLC,**<br><br>    **Defendant.** | Civil Action No. 2:13-cv-4663-JS |

**PLAINTIFFS' RESPONSE TO GSK'S MOTIONS IN LIMINE,
DKT. NOS. 315, 319, 320, 321, 322, AND 323**

Plaintiffs submit this response to GSK's following motions in limine:

- Dkt. No. 315: Motion To "Limit Evidence in Conformity With Plaintiffs' Commitments in Their Discovery Responses to the Court."

- Dkt. No. 319: Motion To "Preclude Plaintiffs From Presenting Certain Testimony By Cheryl Meads."

- Dkt. No. 320: Motion To "Exclude The CBS 'Bad Medicine' Video Aired On 60 Minutes."

- Dkt. No. 321: Motion To "Preclude Plaintiffs From Presenting Testimony Regarding A Dramatic, Prejudicial, And Baseless Story."

- Dkt. No. 322: Motion To "Preclude References To Tax Benefits."

- Dkt. No. 323: Motion "To Preclude Plaintiffs From Referring To Themselves Using the Terms 'Nonprofit' Or 'Mutual.'"

**I.    Dkt. No. 315: Motion To "Limit Evidence in Conformity With Plaintiffs' Commitments in Their Discovery Responses to the Court"**

As this Court has held, Plaintiffs are not required to prove that GSK's drugs caused harm to patients or were unsafe or ineffective. (Rule 12(b)(6) Decision, Dkt. No. 105, at 9-12.) In accordance with the Court's ruling, Plaintiffs answered GSK's contention interrogatories by

stating that they did not need to -- and therefore did not intend to -- present at trial evidence that any At-Issue Drug harmed specific patients or lacked safety or effectiveness as to specific patients, or that any particular drugs prescribed for specific patients lacked the safety, quality, purity, identity, or strength represented by GSK.

Plaintiffs made this commitment in supplemental interrogatory responses in an effort to accommodate GSK's repeated insistence on further answers. Still not satisfied, GSK made a motion to compel. Magistrate Judge Heffley denied the motion, stating:

> GSK's request to compel Plaintiffs to provide further supplemental responses to Interrogatory Nos. 5-7 is DENIED. Plaintiffs' supplemental responses to these interrogatories sufficiently comply with this Court's October 25, 2017 Order and no further response is required.

(Dkt. No. 181.)

Plaintiffs fully intend to comply with their commitments, and GSK has no basis for suggesting otherwise. Thus, GSK's current motion (Dkt. No. 315) should be denied as unnecessary and another waste of the Court's time.

But now that GSK has raised the issue with the Court, it is also important to highlight an aspect of Plaintiffs' case that GSK's motion obscures, and that GSK may well seek to obscure again at trial. While quoting or paraphrasing *some* of each response to GSK's Interrogatory Nos. 5-7, GSK omits important parts of the rest.

**Plaintiffs' Response to Interrogatory No. 5 (harm to patients).** Interrogatory No. 5 stated in full: "State whether you contend that adulterated versions of the At-Issue Drugs manufactured at the Cidra Plant, and for which you paid, caused harm to any patients, stating the bases for the contention and identifying each person with knowledge supporting such a contention." (Dkt. No. 315-6, at 6; Dkt. No. 315-7, at 1.)

Plaintiffs' response stated in relevant part:

2

> The Court has ruled that Plaintiffs "may adequately plead economic harm independent of whether the alleged fraud causes physical harm to the drug users." Dkt. No. 105, at 9. Plaintiffs therefore do not need or intend to prove that the At-Issue Drugs caused harm to specific patients. However, Plaintiffs reserve the right to present evidence that the At-Issue Drugs were harmful in nature as further confirmation or illustration that Defendant's representations that the At-Issue Drugs possessed certain characteristics of safety, quality, purity, identity, or strength were false. For example, Plaintiffs may present evidence of complaints about certain At-Issue Drugs of which GSK had notice, and the manner in which GSK responded to such complaints.

(Dkt. No. 315-6, at 6; see also Dkt. No. 315-7, at 1-2.) GSK's motion now refers only to the first two sentences of this response while omitting the last two sentences.

In opposing GSK's motion to compel before Magistrate Judge Heffley, Plaintiffs did not withdraw or modify their response to Interrogatory No. 5. Indeed, Plaintiffs specifically emphasized that the evidence they were excluding consisted of "proof of patient harms, through medical records or testimony by patients, doctors, pharmacists, family members, or anyone else," while other evidence, such as complaints GSK received from patients or pharmacists about non-compliant drugs (e.g., a mix-up of two products in the same container), remained a valid part of Plaintiffs' case. (Dkt. No. 315-2, at 2.) Such proof does not involve evidence of "harm to specific patients." As noted above, Magistrate Judge Heffley denied GSK's motion to compel, accepted Plaintiffs' interrogatory response, and ruled that "no further response is required."[1]

---

[1] Just as Plaintiffs are committed to avoiding proof of specific patient harms in accordance with this Court's Rule 12(b)(6) decision, GSK should be barred from arguing at trial that "no patients were harmed" or that "patients were benefitted." Plaintiffs have moved in limine to preclude such arguments. (Dkt. No. 311, at 3-4.) As Plaintiffs note in that motion, such arguments are unsupported by any evidence developed by GSK during discovery. Nevertheless, GSK has now repeated its unsupported contention that "no patients were harmed." In Dkt. No. 321-1, discussed in Point IV below, GSK has moved in limine to preclude certain testimony. The motion states that "there is simply no evidence" that any At-Issue Drug "has ever caused any harm to any patient as a result of the manufacturing conditions at the [Cidra] facility." (Dkt. No. 321-1, at 3.) As already discussed, Plaintiffs have no obligation to present such evidence.

**Plaintiffs' Response to Interrogatory No. 6 (unsafe or ineffective).**  Interrogatory No. 6 stated in full:  "State whether you contend that the At-Issue Drugs manufactured at the Cidra Plant were ineffective and/or unsafe, stating the bases for the contention and identifying each person with knowledge supporting such a contention."  (Dkt. No. Dkt. No. 315-6, at 6; Dkt. No. 315-7, at 2.)

Plaintiffs' response stated in relevant part:

> The Court has ruled that "Plaintiffs' injury does not depend on the at-issue drugs' ineffectiveness, or factual speculation concerning future events, but rather on GSK's misrepresentations concerning the production, quality, and safety of the drugs."  Dkt. No. 105, at 9.  Plaintiffs do not need or intend to prove that the drugs lacked safety and/or effectiveness *as to specific patients*.  However, Plaintiffs reserve the right to present evidence that the At-Issue Drugs were unsafe and/or ineffective in nature as further confirmation or illustration that Defendant's representations that the At-Issue Drugs possessed certain characteristics of safety, quality, purity, identity, or strength were false.  For example, Plaintiffs may present evidence of complaints about lack of safety and effectiveness of certain At-Issue Drugs of which GSK had notice, and the manner in which GSK responded to such complaints.

(Dkt. No. 315-6, at 7, emphasis added; see also Dkt. No. 315-7, at 2.)  Again, GSK's current motion omits any reference to the last two sentences of this response.

In addressing GSK's motion to compel before Magistrate Judge Heffley, Plaintiffs maintained their response to Interrogatory No. 6 and explained that they were applying this Court's ruling (quoted in the response above) that Plaintiffs are entitled to show misrepresentations "concerning the production, *quality*, and *safety* of the drugs" (emphasis added).  Accordingly, Plaintiffs' submission to Magistrate Judge Heffley distinguished between "(1) proof that drugs were unsafe or ineffective for individual patients (which Plaintiffs do not need to present), and (2) proof that GSK concealed the conditions at the Cidra plant and made false assurances to patients, doctors, and healthcare insurers that the drugs produced there were properly manufactured (proof that Plaintiffs do intend to present)."  (Dkt. No. 315-2, at 3.)

4

At trial, GSK should not be allowed to obscure this distinction and thus evade this Court's ruling that Plaintiffs may prove misrepresentations by GSK concerning the "quality" and "safety" of Cidra's products.

**Plaintiffs' Response to Interrogatory No. 7 (identification of drugs by individual "prescription").** As revised by an email from GSK's counsel, Interrogatory No. 7 "request[ed] identification of each payment made by plaintiffs (by prescription) for At-Issue Drugs that plaintiffs contend in fact lacked the purity, quality, identity or strength represented by GSK." (Dkt. No. 315-7, at 5.)

Plaintiffs' response stated in relevant part:

> The Court has ruled that "Plaintiffs' injury does not depend on the at-issue drugs' ineffectiveness, or factual speculation concerning future events, but rather on GSK's misrepresentations concerning the production, quality, and safety of the drugs." Dkt. No. 105, at 9. Accordingly, Plaintiffs do not need or intend to prove by individual prescription that the particular drugs prescribed lacked the safety, quality, purity, identity, or strength represented by GSK.
>
> Instead, Plaintiffs intend to prove that GSK made misrepresentations concerning the safety, quality, purity, identity, or strength of the At-Issue Drugs, knowing that the Cidra plant was riddled with serious, chronic, and pervasive manufacturing and quality defects that violated numerous cGMP's and undermined the integrity of every one of the Cidra plant's operating systems and of all the drugs that were manufactured there, as demonstrated by the information specified in response to Interrogatory No. 6 above.

(Dkt. No. 315-7, at 5-6.)

Once again, GSK's current motion ignores relevant portions of Plaintiffs' response. As stated there, Plaintiffs do not intend to prove GSK's misrepresentations by individual prescription, because this Court's Rule 12(b)(6) decision established that proof as to individual patients is unnecessary. Plaintiffs reiterated this point in their submission to Magistrate Judge Heffley: "Plaintiffs' claims do not depend on proving the characteristics of particular pills identifiable by individual prescriptions for specific patients. Instead, Plaintiffs' claims hinge on

5

GSK's concealment of conditions at the Cidra plant and its false assurances that the drugs produced there were properly manufactured." (Dkt. No. 315-2, at 3.)

In sum, GSK's motion mischaracterizes the positions that were stated by Plaintiffs in their interrogatory responses and accepted as sufficient by Magistrate Judge Heffley. GSK's motion should be denied.

## II. Dkt. No. 319: Motion To "Preclude Plaintiffs From Presenting Certain Testimony By Cheryl Meads"

GSK has moved to preclude "certain testimony" by Cheryl Eckard Meads, GSK's former Global Quality Assurance Manager, who was the whistleblower in the qui tam litigation against GSK. The testimony concerns an incident that occurred while Ms. Meads was still employed by GSK. GSK elicited the testimony when it deposed Ms. Meads in the present case.

Plaintiffs in this case had made no prior reference to the incident when Ms. Meads was deposed, and they do not plan to present the testimony or refer to the incident at trial in their case-in-chief. GSK's proposed order therefore is unnecessary. Furthermore, Plaintiffs should be allowed to present Ms. Meads' testimony concerning the incident if GSK uses it in any way to attack her credibility. Because Ms. Meads was the wronged party in the incident, any such attack would be improper. Nevertheless, GSK may attempt to raise this incident -- or other irrelevant matters -- and if that occurs, Plaintiffs would be entitled to respond by presenting her account of what actually happened. (For example, GSK deposed Ms. Meads on various irrelevant aspects of her personnel file, which should not be allowed at trial.)

Consequently, GSK's motion is both unnecessary and overbroad. With the understanding that Plaintiffs will not refer to the incident in their case-in-chief, GSK's motion should be denied.

**III.     Dkt. No. 320:  Motion To "Exclude The CBS 'Bad Medicine' Video Aired On 60 Minutes"**

GSK's motion to preclude any reference to the 60 Minutes report concerning Cidra should be denied.  In its deposition of Ms. Meads, GSK chose to introduce a clip of the 60 Minutes report as a basis for her testimony.  GSK opened the door, and at the very least, that portion of the 60 Minutes report is admissible.

In addition, a significant portion of the report consists of an interview of GSK's authorized spokesman, Ian McCubbin.  Plaintiffs are entitled to present his statements at trial.  For example, Mr. McCubbin stated:

- "We regret what happened in Cidra."

- "[W]e regret that this occurred.  But we've learned from it."

- "[The quality system] was much weaker and that resulted in the compliance issues that occurred."

See https://www.cbsnews.com/news/glaxo-whistle-blower-lawsuit-bad-medicine/

GSK states flatly that the entire 60 Minutes report is "hearsay."  (Dkt. No. 320-1, at 2.)  But Mr. McCubbin's statements are not hearsay.  They are party admissions that qualify under express exceptions to the hearsay rule.  Rule 801(d)(2)(C) excludes from the hearsay rule an opposing party's statement "made by a person whom the party authorized to make a statement on the subject."  And Rule 801(d)(2)(D) excludes an opposing party's statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Mr. McCubbin's statements are admissible under both exceptions.

GSK's motion never addresses McCubbin's statements.  Indeed, GSK purports to list the individuals who speak in the 60 Minutes report -- "a CBS reporter, Cheryl Eckard, Dr. Avorn, and the plaintiffs' attorneys" (Dkt. No. 320-1, at 2) -- but omits Mr. McCubbin.

Moreover, having failed to address Mr. McCubbin's statements, GSK has made no showing that admission of the statements would be unfairly prejudicial and should be barred under Rule 403.  Mr. McCubbin was GSK's authorized spokesman and sought to *defend* GSK's actions at Cidra.  Under Rule 403, relevant evidence may be excluded only if its probative value is "substantially outweighed" by the risk of "unfair prejudice."  As the Third Circuit has recognized:  "Virtually all evidence is prejudicial or it isn't material.  The prejudice must be 'unfair.'"  *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923 (3d Cir. 1985) (quoting *Dollar v. Long Mfg., N.C. Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)).

GSK has failed to meet the "unfair prejudice" test with respect to Mr. McCubbin's statements.  For that reason as well, GSK's motion to exclude the entire 60 Minutes report should be denied.

**IV.     Dkt. No. 321:  Motion To "Preclude Plaintiffs From Presenting Testimony Regarding A Dramatic, Prejudicial, And Baseless Story"**

Plaintiffs oppose this motion to the extent that it seeks to prevent Plaintiffs from presenting *any* testimony or other evidence regarding a pharmacy's report to GSK concerning a product mix-up, or regarding GSK's response to that report -- or other reports -- of problems with Cidra's products.  As already discussed in Point I above, Plaintiffs are entitled to present evidence that GSK discounted reports from the field concerning the safety or quality of its products.  Such evidence may include testimony of Ms. Meads or other witnesses.

On the other hand, Plaintiffs do not intend to elicit testimony from Ms. Meads regarding the specific complaint in issue.  With that understanding, GSK's order is unnecessary and overbroad and should be denied.

**V.	Dkt. No. 322:  Motion To "Preclude References To Tax Benefits"**

GSK seeks to preclude any references to the fact that GSK received hundreds of millions of dollars in tax benefits from its operations in Puerto Rico.  That fact -- which is *undisputed* -- is relevant and admissible to show GSK's motive.  GSK kept Cidra open, despite GSK's knowledge that the plant was fundamentally broken, because Cidra was an enormously profitable cash machine.  GSK's motion should be denied.

The Cidra facility was originally built in 1978 to manufacture a single drug.  By 2004, however, the plant was producing a wide variety of drugs -- in 267 different presentations (distinct drug types, strengths, and packages) -- while running 24 hours a day, seven days a week.  (See Dkt. No. 295, at 3.)  GSK had other plants in the United States and around the world, but only Cidra provided the special statutory tax incentives that reduced to *2%* the effective tax rate applicable to GSK's drugs.  (Dkt. No. 215-1, ¶ 8; Dkt. No. 215-2, Exs. 8 & 9; Dkt. No. 231, ¶ 8.)  As of 2004, the tax savings exceeded "$100 million per year."  (Dkt. No. 215-1, ¶ 8; Dkt. No. 215-2, Exs. 5, 10 & 11; Dkt. No. 231, ¶ 8.)  This led GSK to make Cidra the focal point for its most profitable established drugs and its premier site for new drug production.  (Dkt. No. 205, ¶ 7; Dkt. No. 215-1, ¶ 7; Dkt. No. 215-2, Exs. 6 & 7.)

GSK argues that these tax advantages "have no conceivable connection to plaintiffs' damages claims."  (Dkt. No. 322-1, at 1.)  That is incorrect.  The evidence of tax advantages provides an important explanation as to why GSK kept the plant open and continued to maximize production even though it knew the plant was dysfunctional.  The tax advantages helped Cidra remain enormously profitable for GSK even while it became -- according to GSK's own personnel -- the worst plant they had ever seen.  (See Dkt. No. 31, ¶ 73; Dkt. No. 215-1, ¶ 73; Dkt. No. 215-2, Exs. 21, 26, 84 & 85.)

9

A defendant's motive for engaging in misconduct qualifies as relevant evidence under Rule 401. *See, e.g., Rousseff v. E.F. Hutton Co.*, 843 F.2d 1326, 1330 (11th Cir. 1988) (evidence of "considerable tax benefits" was admissible to show party's motive); *see generally Ramirez v. DiGuglielmo*, 2014 WL 4473651, at *43 (E.D. Pa. Sept. 11, 2014) ("Although proof of motive is not necessary to establish the elements of a crime to support a verdict of guilt, it is always admissible and always relevant evidence.").[2]

GSK's motion fails to address this basic point. Instead, GSK argues that any evidence of tax advantages is irrelevant because Plaintiffs previously cited that evidence in connection with Plaintiffs' RICO claims, which have now been dismissed. (Dkt. No. 322-1, at 3.) But evidence of motive applies to *all* of Plaintiffs' claims. Plaintiffs' reference to tax advantages in connection with their RICO claims cannot preclude Plaintiffs' use of the same evidence in other respects, or for other purposes.[3]

GSK also argues that even if the evidence of tax advantages is relevant, it should be excluded under Rule 403 because it is unfairly prejudicial, will confuse the jury, and will consume too much trial time. (Dkt. No. 322-1, at 4-7.) GSK is wrong on all three counts.

The Third Circuit has stated that relevant evidence may be excluded under Rule 403 only "if its probative value is substantially outweighed by the danger of *unfair* prejudice, not just

---

[2] Cases cited by GSK (Dkt. No. 322-1, at 3) are inapposite because the financial evidence at issue there did not relate to the defendants' motives. *See Advent Sys., Ltd. v. Unisys Corp.*, 1992 WL 185606 (E.D. Pa. July 23, 1992); *Strain v. Borough of Sharpsburg, Pennsylvania*, 2008 WL 1805511 (W.D. Pa. Apr. 21, 2008).

[3] In addition to establishing motive, GSK's tax advantages are relevant to an award of punitive damages in connection with Plaintiffs' common law fraud claim. The financial benefits GSK reaped from punishable conduct are relevant to whether punitive damages should be assessed. *See generally Williams v. Betz Labs., Inc.*, 1996 WL 114815, at *3 (E.D. Pa. Mar. 14, 1996); *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989).

prejudice. *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (emphasis in original). There is nothing unfair -- much less "substantially" unfair -- about establishing a defendant's financial motive for alleged misconduct. *See, e.g., United States v. Onque,* 665 F. App'x 189, 197 (3d Cir. 2016) (affirming admission of evidence of a financial motive for defendant's participation in a conspiracy.) As for GSK's claim that the evidence will arouse "common prejudices against large corporations" (Dkt. No. 322-1, at 5), that argument is weightless when "large corporations" stand on both sides of the case.

In addition, there is no risk that the jury will be confused, or that significant trial time will be wasted. The simple fact that GSK reaped enormous tax advantages -- more than $100 million per year -- from Cidra's operations is undisputed. Plaintiffs stated that fact in their summary judgment papers as follows:

> **Plaintiffs' Proposed Undisputed Fact No. 8**
> Cidra was GSK's focal point for producing both established drugs and new drugs because SB Pharmco functioned as a tax shelter under Puerto Rico "tax incentive" statutes that reduced the effective tax rate applicable to Cidra's products to 2% (among other benefits). [Citing GSK documents and testimony.] As of 2004, the tax savings exceeded "$100 million per year." [Citing GSK documents and testimony.]

(Dkt. No. 215-1, ¶ 8.) GSK's entire response consisted of the following:

> **Response No. 8**
> Undisputed that U.S. tax policy incentivized all pharmaceutical companies to locate manufacturing facilities in Puerto Rico, and that GSK benefited from this tax policy. Disputed as to the characterization of "tax shelter."

(Dkt. No. 231, at 3.)

The fact that GSK obtained "$100 million per year" in tax advantages was established by GSK's own documents and testimony, and has not been disputed by GSK. Consequently, there is no need to go "down the rabbit hole of corporate finance, taxation, and Puerto Rican law," nor any need for the testimony of a "tax expert," as GSK now argues. (Dkt. No. 322-1, at 6 & n.7.)

11

Finally, GSK's motion makes a false accusation. GSK tells the Court that Plaintiffs have raised the subject of tax advantages "to denigrate GSK's location of its facility in Puerto Rico." (Dkt. No. 322-1, at 1.) Plaintiffs have *never* denigrated the Cidra plant or its personnel on the basis of its location, and have no intention of doing so at trial. GSK does not, and cannot, cite anything to the contrary. Throughout this case, Plaintiffs have criticized GSK's conduct solely on the basis of objective evidence that has nothing to do with the plant's location. GSK's suggestion otherwise is irresponsible.

GSK's motion to exclude any reference to tax benefits should be denied.

## VI. Dkt. No. 323: Motion "To Preclude Plaintiffs From Referring To Themselves Using the Terms 'Nonprofit' Or 'Mutual'"

GSK moves to prevent Plaintiffs from describing themselves as "non-profit" or "mutual," or using "any variation of those terms." (Dkt. No. 323-1, at 1.) Plaintiffs do not intend to use such terms extensively at trial, but Plaintiffs' corporate representatives should be allowed to use the terms for the limited purpose of describing their entities truthfully and accurately to the jury. Because Plaintiffs intend to do no more than that at trial, GSK's motion should be denied as unnecessary and overbroad.

Any truthful description of the structure and nature of a corporation would inevitably include whether it is public, for-profit, non-profit, or a mutual company and should therefore be allowed. *See, e.g., Blue Cross & Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, 2013 WL 12129274, at *4 (D. Minn. June 4, 2013) (court viewed testimony regarding parties' non-profit status as "presumptively admissible" so long as it "is descriptive of any Plaintiff entity, or is otherwise of probative value," while excluding testimony regarding "the alleged effect of [the plaintiff's] losses on the operations of their entities, including any effect on the specific endowments for charitable purposes"); *Armstrong v. United States*, 2004 WL 2595931, at *4  (D.

Alaska Feb. 20, 2004) (although a defendant's non-profit status was "largely irrelevant," the court stated: "[B]asic identifying information about any person or entity which is a party to the litigation is routinely admitted in evidence even though it has little or no relevance to the issues in dispute. The trier of fact is entitled to know enough about the parties to understand who or what they are.").

Accordingly, GSK's motion should be denied. The Court should allow evidence regarding Plaintiffs' non-profit or mutual status for the limited purpose of describing their corporate organization to the jury.

## Conclusion

GSK's motions in limine, Dkt. Nos. 315, 319, 320, 321, 322, and 323, should be denied.

Dated: November 1, 2019                    Respectfully submitted,

**LOWEY DANNENBERG, P.C.**
By: /s/ Peter St. Phillip
Peter St. Phillip
Geoffrey M. Horn
Uriel Rabinovitz
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500

**GETNICK & GETNICK LLP**
Neil V. Getnick
Lesley Ann Skillen
Stuart Altschuler
521 Fifth Avenue, 33rd Floor
New York, NY 10175
(212) 376-5666

**LOWEY DANNENBERG, P.C.**
Gerald Lawrence
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
(215) 399-4770

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer
Robert C. Griffith
One Eden Parkway
LaGrange, KY  40031
(502) 587-1279

**THE BREEN LAW FIRM**
James J. Breen
5755 North Point Parkway, Suite 260
Alpharetta, GA  30022
(678) 735-5052

**PROFESSOR G. ROBERT BLAKEY**
Professor of Law Emeritus
Notre Dame Law School*
7002 East San Miguel Avenue
Paradise Valley, AZ  85352
(574) 514-8220
[*Noted for identification only]

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on November 1, 2019 I served the foregoing Plaintiffs' Response to GSK's Motions in Limine, Dkt. Nos. 315, 319, 320, 321, 322, and 323, by email on the following counsel:

>Joseph E. O'Neil
>John J. O'Donnell
>CAMPBELL CONROY & O'NEIL
>1205 Westlakes Drive
>Suite 330
>Berwyn, PA 19312
>
>Stephen J. Kastenberg
>David H. Pittinsky
>Leslie E. John
>Edward D. Rogers
>William B. Igoe
>BALLARD SPAHR LLP
>1735 Market Street 51st Floor
>Philadelphia, PA  19103
>
>Mark H. Lynch
>Matthew J. O'Connor
>Jason C. Raofield
>COVINGTON & BURLING LLP
>One City Center
>850 Tenth Street, N.W.
>Washington, DC  20001
>
>W. Mark Lanier
>THE LANIER LAW FIRM
>6810 FM 1960 Road West
>Houston, TX  77069

/s/ Peter St. Phillip